The opinion of the court was delivered by
Mark, J.
This is a petitory action, in which plaintiff seeks to recover 160 acres of land, the northwest quarter of section five, township thirteen, range eight east, of which Lowry is in possession, claiming title under Mrs. Dorsey and others, warrantors.
Rapp claims under a sale, made on the fourteenth December, 1872, for the taxes of 1871; and the collector’s deed, dated December 16, 1872, and the Auditor’s confirmatory act, of October 26, 1876. The land was assessed and sold as the property of an owner “ unknown.”
In his answer Lowry alleges that the land in controversy is known to have been the property of S. W. Dorsey, or of the estate of S. W. Dorsey; and that the true owner was known to Rapp at the time, before and since the pretended sale under which he claims to have acquired title.
The warrantors derive title from H. S. Dawson, the grantee of the government, who sold and conveyed the land, some 4000 acres, to S. W. Dorsey, in 1836, by private deed, recorded since the tax sale. They allege the nullity of the proceedings under which Rapp claims: that the land was improperly assessed as the property of persons unknown; and that it was well known to the tax collector and to Rapp, who was the real owner, from previous assessments in the name of Dorsey, by whom taxes were paid.
They aver that there was no seizure, or advertisement, or public sale of the land ; and that they have not been made parties to any proceedings had to effect the forced sale, neither by personal notice, nor in any other legal manner.
The evidence shows that Rapp knew that Dorsey owned a large body of land in the parish ; and that he assisted in making up the assessment rolls. It was proven that this land, more than 4000 acres, had been assessed to Dorsey : that he had .agents in the parish at different times, who paid the taxes ; and two tax receipts were offered in evidence showing that Dorsey had paid, personally, by drafts, the taxes for 1857, and 1858, on a valuation of $19,296.
By the constitution, art. 118, deeds made by tax collectors are to be received in evidence as prima facie valid sales ; but they maybe contradicted ; and we think the pleadings in this case make it incumbent on the plaintiff, claiming as owner, to establish something more than a prima fade title to the land, in the possession of the defendant, claiming' also to be the owner.
We do not think the assessor can assess lands as the property of a person “unknown,” without having, first, honestly endeavored to ascer *1274 tain the name and residence of the owner ; and it is not probable that the ownership of a body of 4000 acres of land, which had been owned by the same person for nearly forty years, a resident of an adjoining parish, in whoso name it had been assessed, who had, through himself and his agents paid -the taxes for some years, could be unknown in the sense of the law. Section 23, of the act of 1871, required the assessors to make diligent inquiry, between February and July, in order to obtain correct information as to the taxable property in the parish, the description, and the names of the inhabitants. The testimony shows that the assessor could, without much trouble, have ascertained from residents of the parish, and from the tax rolls for former years, that S. W. Dorsey was-the owner of this large body of land.
Upon the hypothesis that the circumstances justified the assessment of this land as the. property of a person “ unknown,” certain legal formalities were required in order to effect a valid sale. Section fifty-seven, of the act of 1871, p. 120, required the tax collectors to give twenty days public notice, written or printed, to the person in whose name the assessment is made, to pay the tax, after which the collector may make a seizure, by recording a description of the property, with the amount due, in the mortgage-book of the parish in which it is situated ; and, on the fourth day after such recordation, he shall proceed to sell, without legal process, to pay the tax and all lawful costs, after advertising three times within twenty days.
Section sixty, of the same act, required; in all cases of vacant property, or when the owners were unknown or absent, and -had left no-known agent, the parish or district judge, on application of the tax col-' lector, to appoint a curator ad hoc, upon whom the notice was to be served ; and if, within twenty days after notice, the tax was not paid, the tax collector might seize and sell the property without process of court, as prescribed in section fifty-seven.
The recital in the tax collector’s deed, with reference to notice is as-follows : “ By virtue of the power in me vested by law, I did give to .‘unknown ’ due and legal notice, that he owed the following taxes, to wit,. *■ * * for the year 1871, which taxes were duly and legally assessed on the following property, to wit: the northwest quarter of section five, township thirteen, range eight east, containing 160 acres, more or less, * * * and the'said ‘ unknown’ not having paid said taxes within said legal delays, I gave said ‘unknown’ twenty days further written and printed notice to pay said taxes, and the said ‘ unknown ’ still failing to-pay-said taxes, I proceeded to make seizure”’ etc.
There is no mention of the appointment of a curator acl hoc, and, what is more important, there is no proof in. the record of the appointment of a curator ad hoc as required by section sixty- of the act. The *1275 tax deed is evidence prima facie of a valid sale; but in the absence of recital in the deed, and of proof aliunde of the appointment of a curator, and the service of notice on him, the sale o£ the land of an owner non-resident and “ unknown” is not valid : it is absolutely void.
It is proven in this case that on the 13th of April, 1870, Rapp sold and conveyed to Lowry, the defendant, his claim and interest in and to lands which he had purchased at tax sales, containing near 1300 acres, supposed to be in sections five and eight of township thirteen, range eight east. Of course this included all of the two sections. Lowry says-it included the quarter section in controversy, as it did, of course, and much more besides. It was called the Routh place, because John K. Routh had settled on it; but Lowry says that he gathered from his conversations with Rapp that Rapp knew that it was part of the Dorsey tract. Rapp himself says : “ It was my understanding that Routh settled on the Dorsey land, I believe on a part of the 4000-acre tract. After I saw Dorsey, in 1869 or 1870,1 did not know who the land belonged to„ I proposed buying from him the 4000-acre tract, or part of it. He remarked to me that he could not sell it then, that he would correspond with parties in Maryland that had an' interest in the land, and he would let me know : and he remarked, 11 don’t own the land myself.’ * * *• In my conversation with Dorsey he made an impression with me that he had an interest in the land. Did not know what interest, nor in what, part of the land.”
He also states that the land which he purchased for taxes, in 1867, the same which he sold to Lowry on the 13th June, 1870, was assessed to John K. Routh ; and that he thought it" was Dorsey’s land because he had seen it assessed to Dorsey “ prior to the time that I had seen it. assessed to Routh.”
The deed from Rapp to Lowry was recorded on the 16th of July, 1870, and Lowry was in possession under that deed at the time' the land was assessed, and 'at the time it was sold as the property of a person “ unknown,” of which Rapp could not have been ignorant.
If the tax sale and title under which Rapp claims were otherwise valid, there would still be an insuperable barrier to his recovery of the land from Lowry. If this land were properly assessed and sold as the property of a person “ unknown,” it was not Lowry’s property; and it must have been the property of some person “ unknown ” at the time Rapp sold to Lowry: and Rapp has simply acquired, since his sale to Lowry, a title which was outstanding at the time that sale was made, superior to the title which Rapp conveyed to Lowry. It is shocking to morals, and to common honesty and decency, it can not be tolerated in. law, that a. vendor, even without warranty, should subsequently acquire a title superior to that which he convéyed to his vendee, and attempt to- *1276 •oust his vendee under that title. The exclusion of warranty in the deed from Rapp to Lowry exempts Rapp from responsibility to Lowry for ■eviction by any other person under a superior title; but it does not release Rapp from responsibility for any disturbance of Lowry by himself, •or by any other person under a title emanating from him, outstanding at the time of his conveyance to Lowry. If there be such superior outstanding title, Lowry might be evicted under it; but not b.y Rapp ; and •any title which was outstanding at the time Rapp conveyed to Lowry, and which Rapp has acquired, or may hereafter acquire, to the land conveyed by him to Lowry, must inure to the benefit of Lowry. It seems -that Lowry had no great confidence in the title conveyed to him by Rapp, and he merely fortified himself by acquiring a title from the owners, deriving from the Government.
The district judge erred in maintaining the title set up by Rapp and -awarding to him the land which he had conveyed to Lowry.
The judgment appealed from is therefore annulled, avoided, and reversed ; and it is now ordered, adj udged, and decreed that the demand of plaintiff, appellee, be rejected, and that his suit be dismissed; and that he be condemned to pay the costs of this appeal and the costs in the district co.urt.